Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG,
Hon. ASAHEL PECK, } Assistant Judges.
Hon. WILLIAM C. WILSON,
Hon. BENJAMIN H. STEELE,

---

### JOHN GOODELL v. AARON PIKE, LUCY S. PIKE, HIS WIFE, AND TOWN OF SEARSBURG.

#### Soldier's Will.   Infancy.   Probate Court.

An infant cannot make a valid soldier's will.

The probate of this will was procured at the instance of the husband of the sole legatee, with full knowledge of the alleged testator's age, which was seventeen years. It was not claimed that the probate court was made aware of the alleged testator's infancy. No effort was made to advise the heir at law of the proceedings, and the probate was procured before he was informed of the decease. The will was made by the infant shortly after his enlistment while with the husband of the legatee, in whose family he was residing, and who had procured himself to be appointed the infant's guardian in order to consent to his enlistment. *Held*, that these facts were sufficient evidence that the withholding from the probate court of all information of the alleged testator's infancy was wilful and corrupt, and the probate procured thereby was fraudulent and invalid.

BILL IN CHANCERY. The bill charges, that the orator, now of Rockingham, lived in Somerset in 1855, when his wife ran away with one Oliver Pike to Wisconsin, taking with her the orator's infant son, Francis, aged about seven years. That soon after Oliver sent the boy to his brother, Aaron Pike, in Searsburg; that the orator thereupon made a verbal agreement with Aaron to keep the boy till he should be twenty-one, school, clothe, and maintain him, and teach him the trade of a bedstead maker, and pay him $100. on his coming of age; that Francis lived with Aaron accordingly till August 31st, 1864, when, being about seventeen years old, he enlisted into the United States service, by the procurement of Aaron; was mustered and went off to the war; that such enlistment was without the knowledge or consent of the orator; that Francis enlisted to the credit of Searsburg, and received a town order for $500., as a bounty from that town; that September 2d, 1864, Aaron procured Francis to make a will, which is set out in the bill, *in haec verba,* by which he bequeathed all his property to Lucy S. Pike, and made Aaron executor; that Francis died at Port Hudson, Louisiana, November 26th, 1864; that Aaron presented said will for probate, January 4th, 1865, and fraudulently concealing from the court the fact of Francis' minority, and representing him to have been of full age when the will was made, procured the will to be allowed and established by the court January 20th, 1865.

That the orator did not know of his said son's enlistment, nor of his making a will, nor of his death, nor of the presentation of the will for probate, nor of the probate thereof, till after the time for appealing from such probate had elapsed.

That Aaron and his wife fraudulently concealed from the orator knowledge of the enlistment, death, and probate of the will of his son, till too late to take an appeal.

That Aaron insists upon holding the property under the will, and threatens to collect for his own, or his wife's use, the town order of $500.

The orator insists that the will was void on account of the infancy of said Francis; that its probate was procured by the fraud of Aaron; that he is the sole heir of his son and entitled to the property; that

Aaron Pike is insolvent, and if he gets hold of the money it will be lost.

PRAYER. That Searsburg may be decreed to pay the order to the orator, and be enjoined in the meantime from paying it to anybody else ; and that the other defendants may be decreed to surrender the order to the orator, and be restrained from setting up any title to it by virtue of said will and probate ; and be enjoined in the meantime from negotiating or parting with it ; and for further relief, &c.

The joint and several answer of Aaron and Lucy Pike denied any fraud in the probate of the will.

The town of Searsburg did not answer.

The answer was traversed, and there was filed the following statement of facts agreed upon by the parties :

John Goodell, the orator, is the father and heir at law of Francis Goodell, who died at Port Hudson, Louisiana, on the 26th day of November, A. D. 1864.

Said Francis Goodell was born at Monroe, in the state of Massachusetts, September 22d, 1847. On the 31st day of August, 1864, said Francis Goodell enlisted, was uniformed, and was mustered into the service of the United States at Rutland, Vermont, by the provost marshal of the first district ; on the same day the defendant, Aaron Pike, was duly appointed guardian of said Francis, and as such guardian, consented to such enlistment and muster.

Immediately after said enlistment and muster, the said Francis returned to the house of the defendant, Pike, in Searsburg, upon a furlough, and while thus at home he went to Wilmington, in company with the defendant, Aaron Pike, and on the 2d day of September, 1864, he executed the will.

Said enlistment of Francis Goodell was without the knowledge or consent of the orator, nor had the orator any knowledge of the death of his said son until after said will had been admitted to probate, and until after the time within which an appeal could be taken had elapsed.

This case was heard on bill, answer, replication and statement of agreed facts, at the September Term, Windham County, 1867, BARRETT, Chancellor, when it was considered and ordered that Aaron

Pike deliver said order for said five hundred dollars to the orator, and that he and his wife refrain from claiming or receiving the payment thereof, and that said town pay the same to the orator, with the interest legally accrued thereon, and that the orator recover his costs in this suit of said Pike. The decree was made accordingly, and the defendants, Aaron and Lucy S. Pike, appealed.

*H. H. Wheeler, E. E. Waterman,* and *J. H. Flagg,* for the defendants.

I.   Courts of equity have never interfered to disturb the probate of a will granted by a court having jurisdiction, except where the decree was shown to be clearly wrong, and was granted upon the consent of the heir at law procured by the fraud of the party claiming under the will. 2 Red. ch. 1, §5; Brown's Case, 1 Swinb. 75.

Whenever interference has been sought upon any other ground it has been undeviatingly denied. 2 Redf., ch. 1, § 5; 3, pp. 49, 50, 51; *Gingell* v.*Horne,* 9 Sim. 539; *Laughton* v. *Atkins,* 1 Pick. 535; *Tarver* v. *Tarver,* 9 Pet. 174; Catron, J., 2 How. 651.

*Barnesly* v. *Powell* is the principal, if not the only, authority for such interference, and Lord HARDWICKE granted relief in that case upon the ground that the ecclesiastical court would have had no power to set aside the fraudulent deed upon which the probate depended. 1 Ves. Sen. 284; 1 Ves. Sen. 287, [288.]

In the case at bar it is not claimed that the probate court could have needed aid from the court of chancery for want of adequate power in itself.

II.   Should any relief be granted, it should only go so far as to give the orator an opportunity to contest the will in the proper court. Redf., J., 20 Vt. 522; I Ves. Sen. 289.

The right to contest the will is all he can claim to have lost, and to that right only can he claim to be restored. *Gaines* v. *Shaw,* 2 How. 619.

III.   These considerations show the orator's remedy, if he have any, to be by petition to the supreme or county court. Gen. Stat. 333, § 5.

*Charles N. Davenport*, for the orator, cited upon the point as to the effect of a decree of the probate court setting up this paper as the last will and testament of Francis Goodell, *unappealed* from, the following cases : *Dablin* v. *Chadbourne*, 16 Mass. 433 ; *Poplin* v. *Hawke*, 8 N. H. 124 ; 1 Greenl. Ev. § 550 ; 2 Greenl. Ev. §§ 339, 672 ; 1 Jarmon, 22, 23 and notes ; 1 Jarmon, 219, 220, 221 and notes ; *Woodruff* v. *Taylor*, 20 Vt. 65 ; *Starbird et al.* v. *Moore*, 21 Vt. 529 ; *Pearson, Adm'r*, v. *Chase*, 37 Vt. 647 ; *Packer* v. *Packer*, 11 Cush. 519.

And upon the point as to the power of this court to relieve against the judgment of a court of law obtained by fraud, or when its enforcement would be against equity and good conscience, *Dana* v. *Nelson et al.*, 1 Aik. 252 ; *Nason et al.* v. *Smalley et al.*, 8 Vt. 118 ; *Bradley et al.* v. *Richardson et al.*, 23 Vt. 720 ; *Warner* v. *Conant*, 24 Vt. 351 ; *West* v. *Bank of Rutland et al.*, 19 Vt. 303 ; 3 Daniels' Chan. Prac. 1843 ; 2 Story's Eq. Com., §§ 885, 886, 887 ; 1 Maddock's Chan. 300 ; *Maundy* v. *Maundy*, 1 Ch. Rep. 66 ; *Goss* v. *Tracy*, 1 P. Wm's, 287 ; *Roberts* v. *Wynne*, 1 Ch. Rep, 125 ; *Archer* v. *Moss*, 2 Vern. 8 ; 1 Story's Eq. Com., §§ 184, 185 and notes ; 1 Fonblanque's Eq., Book 1, ch. 2, § 3, note (n.) ; 1 Maddock's Chan. p. 260.

The opinion of the court was delivered by

STEELE, J. It is urged that this will, though made by an infant of the age of seventeen years, may have been valid as a soldier's will, by virtue of some ratification it may have received while the infant was in actual military service, and that its probate may have been, or may hereafter be, justified by proof of such a ratification.

We do not think the statute enables an infant to make a valid will under any circumstances. The statute of wills, in general terms, limits the right of disposing of property by testament to persons of full age. After declaring the forms which must be observed in their execution, it provides that " nothing in this chapter shall be construed to prevent any soldier in actual military service, or any mariner or seaman being at sea, from disposing of his wages, or other personal estate, as he might otherwise have done." We think the words " *as he might otherwise have done*," refer merely to the mode of execution.

This view is warranted by the language, is sustained by its connection with the preceding sections, and is confirmed by the reason of the provision. The situation of soldiers in actual service, and of sailors at sea, renders it impracticable for them to observe the statutory forms in making wills, and this provision is made in view of that fact. It would not be reasonable to provide that an infant soldier's will made in due form while out of actual service would be invalid, and that the same will made without form while with his regiment in service would be valid. His infancy is just as much a disability *in fact* in the one case as the other, and we see no reason why it should not be *in law.* In England no distinction existed between soldiers and civilians as to the age necessary to make a valid testament, but only as to the mode of execution. Either might dispose of personal property by will after arriving at the age of fourteen years. When our statute limited the testamentary privilege to persons of full age, it continued the distinction as to the mode of execution which existed before, and for which there was reason. It did not create a new distinction for which no reason existed. Soldiers and civilians stand equal in the law as to the testamentary power or privilege, but the soldier is excused from observing certain forms in exercising his privilege out of consideration for the necessary embarrassments of his situation while in actual service.

This will was absolutely invalid, and its probate was at the least unauthorized. The disability arose not from unsoundness of mind, the question with relation to which, must always be a matter of judgment. It was an absolute disability depending upon an arbitrary fact which is not disputed. If the statute had limited the right to make wills to males, the probate of the will of a female would have been as easily justified as this. Still we are not now prepared to say that the probate of the will of a person, who should afterwards prove to be a minor, is void, or that it could, except in extreme cases, or for that reason alone, be set aside, or that it ever should be set aside if the fact of the infancy was doubtful, or had been contested and tried in the probate court, or if the heir at law had had actual notice of the presentment of the will for probate. These points we do not discuss or decide. We think the facts of this case are suffici-

ent to warrant the court in deciding it upon the plainer ground that the probate was so procured as to amount to a fraud upon the heir at law. The court of chancery should find the fact of fraud upon less evidence, and restrain the legatee from claiming under the probate for a less serious fraud than would ordinarily be held sufficient, when, as in this case, the infancy is conceded, and the heir at law entirely unaware of the proceedings, and the probate manifestly and glaringly wrong. It turns out, in this case, that the infant testator enlisted at the age of seventeen ; that he was living at the time with the defendant, Aaron Pike ; that the said defendant procured himself to be appointed the minor's guardian, in order to consent to his enlistment. The infant was to have a bounty of five hundred dollars from the town of Searsburg ; and while still residing in the guardian's family after enlistment, he went with this guardian to Wilmington, and there made a will, appointing the said Aaron Pike his executor, and Aaron Pike's wife his sole legatee. The soldier went to the front, and soon died at Port Hudson. His father, who was his heir at law, knew neither of his enlistment, nor his death, until after the defendant, Pike, had procured the will to be probated. It is not claimed that the defendants made the least effort to notify the orator of his son's death, and the probate was thus effected at the interested instance of the husband of the sole legatee. The defendants concede that they knew of the alleged testator's infancy, and they do not claim to have brought the fact to the notice of the probate court, or that the court was otherwise informed of it. Taking all the facts together, we are satisfied that the withholding from the probate court of all knowledge of this material fact was wilful, and for a corrupt purpose, and the probate procured thereby, was a fraud upon the heir at law from which the legatee should derive no advantage.

The question as to whether usually this proceeding should not be by petition, instead of a bill in chancery, is not legitimately involved in this case, because the necessity of an injunction upon the insolvent defendant, Aaron Pike, rendered a resort to the court of chancery necessary, even if otherwise it would not be proper.

It is urged that the decree should not in any event be affirmed, but the matter should be left open for the probate court to order a new

hearing. As we hold that an infant can, under no circumstances, make a valid will, this is not necessary.

It is further insisted, that there may be debts against the infant's estate, but as the defendant town of Searsburg does not appeal from the decree of the Chancellor, and as the heir at law is entitled to the estate as against the defendant, Pike, we do not deem it necessary to discuss the case with reference to this unproved and merely supposable state of facts.

The decree of the chancellor is affirmed, and cause remanded.